# United States Court of Appeals

## For the First Circuit

No. 19-1367

PUERTO RICO FARM CREDIT, ACA,

Plaintiff, Appellee,

v.

ECO-PARQUE DEL TANAMÁ CORP.; IVÁN ORTIZ-RUIZ; ANA MARÍA SERRANO-
BÁEZ; CONJUGAL PARTNERSHIP ORTIZ-SERRANO,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lynch and Kayatta, Circuit Judges,
and Laplante,[*] District Judge.

Bámily López Ortiz, with whom Lopez Toro was on brief, for
appellants.
Mauricio O. Muñiz-Luciano, with whom Ignacio J. Labarca-
Morales and Marini Pietrantoni Muñiz LLC were on brief, for
appellee.

March 28, 2022

---

[*] Of the District of New Hampshire, sitting by designation.

**KAYATTA**, **Circuit Judge**. When a borrower is in default for failure to satisfy its payment obligations under a loan, the borrower may prefer that the lender agree to restructure the loan rather than foreclose on the collateral securing the loan. If the loan is subject to the Farm Credit Act (FCA), the lender is sometimes required to restructure the loan rather than foreclose. A lender's decision to foreclose rather than restructure forms the basis of this appeal.

The borrowers-defendants in this case -- Eco-Parque del Tanamá Corp., its principal officer Iván Ortiz-Ruiz, his wife Ana María Serrano-Báez, and their conjugal partnership -- defaulted on a loan extended by lender-plaintiff Puerto Rico Farm Credit, ACA. The loan is subject to the FCA, 12 U.S.C. § 2001 et seq. The borrowers applied to restructure the distressed loan. The lender rejected their application. The borrowers requested review before the lender's Credit Review Committee, which also denied their restructuring request. The lender eventually filed this lawsuit, seeking repayment and foreclosure. The district court ultimately granted summary judgment for the lender and denied the borrowers' motion for reconsideration. The borrowers appealed. We review the district court's summary judgment grant de novo and its denial of the borrowers' motion for reconsideration for abuse of discretion. Harley-Davidson Credit Corp. v. Galvin, 807 F.3d 407, 411 (1st Cir. 2015).

The borrowers' reliance on the FCA's restructuring requirement as a defense to foreclosure runs head-on into the following unchallenged findings made by the lender:

- the lender could not verify the source of some of the borrowers' listed income;

- the borrowers' income did not justify their credit request;

- the borrowers had excessive obligations relative to their income;

- the borrowers lacked the financial capacity to make the payments they proposed; and

- the borrowers' financial condition did not support their requested loan.

These unchallenged findings call into question whether the borrowers even submitted an "application for restructuring." 12 U.S.C. § 2202a(a)(1). The FCA defines such an application as including (among other things) "sufficient financial information and repayment projections, where appropriate, as required by the qualified lender to support a sound credit decision." Id.

More importantly, even assuming that the borrowers' submission constituted an application for restructuring, the FCA expressly calls on the lender to consider whether the requested restructuring is viable. Section (d)(1) provides:

> When a qualified lender receives an application for restructuring from a borrower, the qualified lender shall determine whether or not to restructure the loan, taking into consideration --

(A) whether the cost to the lender of restructuring the loan is equal to or less than the cost of foreclosure;
(B) whether the borrower is applying all income over and above necessary and reasonable living and operating expenses to the payment of primary obligations;
(C) whether the borrower has the financial capacity and the management skills to protect the collateral from diversion, dissipation, or deterioration;
(D) whether the borrower is capable of working out existing financial difficulties, reestablishing a viable operation, and repaying the loan on a rescheduled basis; and
(E) in the case of a distressed loan that is not delinquent, whether restructuring consistent with sound lending practices may be taken to reasonably ensure that the loan will not become a loan that it is necessary to place in nonaccrual status.

Id. § 2202a(d)(1). Subsections (B), (C), and (D) all direct the lender to consider a borrower's financial condition, which bears on the borrower's ability to "repay[] the loan on a rescheduled basis" and, by extension, the viability of the application for restructuring. See also 12 C.F.R. § 617.7415(a)(2)-(4).

Further, in calculating the cost of restructuring, the lender "shall consider":

(C) whether the borrower has presented a preliminary restructuring plan and cash-flow analysis taking into account income from all sources to be applied to the debt and all assets to be pledged, showing a reasonable probability that orderly debt retirement will occur as a result of the proposed restructuring; and

- 4 -

> (D) whether the borrower has furnished or is willing to furnish complete and current financial statements in a form acceptable to the institution.

12 U.S.C. § 2202a(e)(2); see also 12 C.F.R. § 617.7415(a)(1)(iii)-(iv). In other words, a lender must consider a restructuring plan's credibility and viability.

All of this is simply to state the obvious: A lender need not accept a plan of restructuring that the borrower cannot perform. After all, the FCA only requires restructuring when it would cost the lender no more than foreclosure. 12 U.S.C. § 2202a(e)(1); 12 C.F.R. § 617.7415(d). And, absent unusual circumstances not present here, a failed attempt at restructuring followed by foreclosure would likely cost the lender more than would foreclosure alone.

The borrowers further contend that the lender was required to propose its own restructuring plan after it denied the borrowers' restructuring application. It is true that the FCA does "not prevent a qualified lender from proposing a restructuring plan for an individual borrower in the absence of an application for restructuring from the borrower." 12 U.S.C. § 2202a(d)(2). But that grant of permission does not require a lender to propose a restructuring plan of its own, much less to do so when the borrower's financial circumstances reveal no basis for concluding that a reasonable restructuring is possible.

There being no other preserved challenge to the finding that the lender properly considered and rejected the requested restructuring, we agree that the lender was entitled to summary judgment on the record before the district court.

The borrowers' subsequent motion for reconsideration focused on their assertion that the lender should have estimated a higher cost of foreclosure. But given the fact that the borrowers demonstrated no ability to perform their obligations under the proposed restructuring, any challenge to the lender's estimate of the transactional costs of foreclosure cannot change the outcome.

We <u>affirm</u> the challenged judgment and order of the district court.